ELECTRONICALLY FILED
Pulaski County Circuit Court
Terri Hollingsworth, Circuit/County Clerk
2022-Jul-25  11:52:39
60CV-22-4786
C06D16 : 38 Pages

IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS
CIVIL DIVISION

DONNIE GATES                                                                    PLAINTIFFS

v.

FIRST ORION CORPORATION                                          DEFENDANT

## COMPLAINT

Comes Plaintiff Donnie Gates, by and through his attorneys, James, House, Swann & Downing, P.A. and for his Complaint states:

### I.     INTRODUCTION

1.     Plaintiff brings this action against Defendant, First Orion Corporation ("First Orion"), to seek relief for Defendant's deprivation of Plaintiff's rights under Arkansas common law, contract law, and statutory law.

### II.     PARTIES

2.     Donnie Gates is a resident of Lonoke County, Arkansas.

3.     First Orion is registered in Arkansas as a foreign corporation with its principal place of business located in Pulaski County, Arkansas.

### III.     JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction under Amendment 80 to the U.S. Constitution.

5.     This Court has personal jurisdiction over the Defendants under Ark. Code Ann. § 16-4-101(b).

6.     Venue is proper in Pulaski County, Arkansas under Ark. Code Ann. § 16-60-101.

1

EXHIBIT
A

7.      Plaintiff seeks damages in excess of $75,000.00 and in excess of the amount required for federal court jurisdiction in diversity of citizenship cases.

## IV.      FACTUAL ALLEGATIONS

8.      First Orion represented to Plaintiff that he would be required to sign a Proprietary Information Inventions Agreement which was made available to him electronically.

A.      General

9.      At all times relevant, First Orion employed 50 or more employees who had 20 or more work weeks in 2021.

10.     At all times relevant, First Orion employed 50 or more employees who had 20 or more work weeks in 2022.

11.     At all times relevant, First Orion employed 50 or more employees within 75 miles of the location where Plaintiff primarily performed his duties for First Orion.

12.     On or about June 13, 2019, Plaintiff became employed with Defendant First Orion.

13.     At the time the Plaintiff was hired, he was 60 years old and intended to finish out his career, working with First Orion until he retired.

B.      First Orion's Claim of Non-Competition Agreement

14.     First Orion contends that in connection with Plaintiff's employment with it, Plaintiff electronically executed a Proprietary Information and Inventions Agreement with non-competition provisions.

15.     Plaintiff has no recollection of and does not believe he signed any non-competition agreement with First Orion.

16.     Plaintiff believes he did sign a Proprietary Information and Inventions Agreement.

2

17.     To the extent Plaintiff actually signed a non-competition agreement (and he does not believe he did), he contends that First Orion fraudulently induced him to enter the contract by making a false representation that Plaintiff was signing a Proprietary Information and Inventions Agreement when it actually included non-competition provisions.

18.     First Orion knew the representation was false when it was made. Their representation was made for the purpose of inducing Plaintiff to enter into the contract. Plaintiff justifiably relied upon the representation.

19.     Plaintiff would not have entered into the contract except for the false representation.

20.     First Orion has failed to uniformly enforce its non-competition and confidentiality provision.

C. Plaintiff's Compensation

21.     Plaintiff was involved in sales of branded calling for companies that make myriad phone calls. He was responsible for developing, negotiating, and executing contracts.

22.     Plaintiff received commission income on transactions that were eventually closed based on relationships he developed.

23.     Accordingly, Plaintiff's compensation per work week was sales commissions plus a base salary.

24.     The method of compensation of Plaintiff by First Orion changed during the course of his employment with the last terms being salary plus commission based on ACV (Annual Contract Value).

D.     Plaintiff's Performance

25.     Upon information and belief, with one pretextual exception discussed below, First

3

Orion never wrote up Plaintiff or otherwise disciplined Plaintiff in any way for violating any of First Orion's policies or procedures.

26.     During the term of his employment Plaintiff was a loyal employee of First Orion and generated substantial revenue for First Orion.

27.     Plaintiff always met or exceeded his sales goals as set by First Orion.

28.     Plaintiff never received a negative employment evaluation.

29.     To the contrary, Plaintiff received several congratulatory "kudos" and compliments from Defendants and customers during the course of his employment.

30.     During the course of Plaintiff's employment, younger employees were treated generously by Defendants with little consequences for major errors.

31.     Likewise, in 2021-2022 numerous persons younger than Plaintiff became employed with First Orion.

E.   █████████████████████████████████

32.   █████████████████████████████████████

████████████████████████████████████████

███████████████

33.   ███████████████████████████████████

████████████████████████████████████████████

████

34.   █████████████████████████████████████

██████████████████████████████████

35.   █████████████████████████████████████

████████████████████████

4

36. ▮▮▮▮▮▮▮▮▮▮▮▮

37. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

38. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

39. Defendants promptly retaliated against and punished Plaintiff for his disclosures.

40. Within days of the disclosures, on or about October 7, 2021, Plaintiff used the word "damn" in the office and was pretextually disciplined by Defendants by removing his team and removing Plaintiff from any supervisory role.

41. Except for this pretextual "disciplinary action" Plaintiff was not disciplined or given any warning during the entire period of his employment.

42. These actions were taken against Plaintiff despite the fact that Chairman and CEO Charles Morgan regularly used vulgarity around the office and routinely dropped "F bombs" during the workday.

F.    Stock Options

43. In connection with his employment, Plaintiff received certain stock options.

44. Additional stock options were to vest on or about June 17, 2022.

G.    Termination of Plaintiff

45. After years of loyal service, on June 1, 2022 Plaintiff was abruptly terminated by Defendants without cause or notice.

46. At the time of his termination Plaintiff was the top producer at First Orion and had no employment issues.

47. Plaintiff believes, and therefore alleges, he was replaced by younger employee(s)

of First Orion.

48.     Immediately upon termination Plaintiff was required to meet with First Orion's General Counsel and Head of Human Resources.

49.     In that meeting, First Orion demanded that Plaintiff execute a Separation Agreement and Release of Claims (attached as Exhibit A).

50.     The Separation Agreement and Release of Claims contained several provisions including:

- A release of claims under the Age Discrimination in Employment Act ("ADEA").

- A release of claims under both the Federal and State Civil Rights Acts.

- A release of claims under the Arkansas Minimum Wage Act

- A broad generic release for Defendants' violations of common law, statute, tort, or contracts.

- Numerous other one-sided, adhesive provisions.

51.     Plaintiff was informed that if he did not execute the Separation Agreement and Release of Claims he would not be paid for commissions he was due.

52.     Commissions Defendant was to pay Plaintiff under the Separation Agreement and Release of Claims were at a lower percentage than Plaintiff was entitled.

53.     On June 1, 2022, the same day of termination, First Orion's General Counsel wrote Plaintiff telling him the terms of the Separation Agreement and Release of Claims were the best that First Orion was willing to provide him, and that the decision to terminate his employment with First Orion would not change. Exhibit B.

54.     Apparently anxious to require Plaintiff to sign the Separation Agreement, the next

6

day, June 2, 2022, First Orion caused its General Counsel and Head of Human Resources to again email Plaintiff in an effort to induce him to sign the punitive and one-sided separation Agreement. Exhibits C and D.

55.     In those communications, the General Counsel also sent Plaintiff a copy of the Proprietary Information and Inventions Agreement (Exhibit A) demanding that Plaintiff comply with its terms, which included a non-competition agreement.

56.     On June 9, 2022 counsel for Plaintiff wrote First Orion's General Counsel addressing concerns about age discrimination, payment of commissions, the non-competition clause, and other issues.  Exhibit E.

57.     The next day, June 10, 2022, First Orion caused its counsel to send another letter stating, among other things, that Plaintiff was removed from a leadership role on October 7, 2021. Exhibit F.

58.     Thereafter, First Orion failed and refused to pay Plaintiff not only for transactions that were pending but also for transactions which had closed prior to his termination.

59.     Upon Plaintiff's termination, First Orion did not timely pay the wages due Plaintiff.

60.     As an employer that discharged an employee who was required to pay all wages, due by the next regular payday.

61.     First Orion failed and refused to do so.

62.     Defendants kept some records on Plaintiff and directly paid him wages.

63.     As a result of Plaintiff's wrongful termination, Plaintiff has incurred the loss of wages, benefits and other damages.  Plaintiff was approximately 62 years old at the time First Orion terminated him.

7

64.     Upon information and belief, after terminating Plaintiff, First Orion hired younger individuals to perform his work.

65.     Since terminating Plaintiff, First Orion has not paid Plaintiff any commissions.

66.     Plaintiff earned commissions on sales that Plaintiff made while employed by First Orion that First Orion has never paid.

H.     Withdrawal of Separation Agreement

67.     Because of First Orion's disparate treatment of Plaintiff and their refusal to pay sums due, Plaintiff retained counsel.

68.     On June 3, 2022, Plaintiff's counsel wrote First Orion's General Counsel, notifying him of the engagement and seeking information.  (See Exhibit B).

69.     Thereafter, on June 7, 2022, First Orion withdrew its proposed Separation Agreement in retaliation for protection of rights.

COUNT I - BREACH OF CONTRACT

70.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1- 69.

71.     As a result of his employment, Plaintiff is due certain commissions which Defendant has failed to pay.

72.     Plaintiff seeks judgment against First Orion for those commissions in an amount which has not been determined but it is in excess of that required for federal diversity jurisdiction.

COUNT II – FRADULENT INDUCEMENT

73.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 – 72.

74.     Defendant First Orion contends that Plaintiff executed a non-competition

8

agreement.

75.     Plaintiff disputes the execution, if done, was fraudulently induced to do so.

76.     As a result, Plaintiff seeks declaratory judgment voiding the non-competition agreement due to the fraudulent inducement.

COUNT III – DECLARATORY JUDGMENT –

OVERBEATH OF NON-COMPETITION AGREEMENT

77.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 - 76.

78.     In the unlikely event it is determined that the non-competition agreement was executed by Plaintiff, Plaintiff seeks a declaratory judgment determining the current document to be unenforceable as being overly broad and greater than necessary to protect any competitive interest of Plaintiff.

COUNT IV – VIOLATION OF A.C.A. SECTION 11-4-405

79.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1- 78.

80.     Plaintiff was employed by First Orion and was discharged by it on or about June 1, 2022, First Orion terminated Plaintiff.

81.     First Orion failed and refused to pay Plaintiff wages he was owed within seven days of the next regular payday.

82.     First Orion's actions were in violation of A.C.A. Section 11-4-405 and owes Plaintiff double the wages due.

83.     Plaintiff seeks judgment against First Orion for those commissions in an amount which has not been determined but it is in excess of that required for federal diversity jurisdiction.

9

WHEREFORE, Plaintiff Donnie Gates prays for damages against First Orion for breach

of contracts; seeks to terminate or modify any non-competition agreement; seeks to terminate

non-competitions as being overly broad; for attorney's fees, costs and all other just and proper

relief.

Respectfully submitted:

/s/ Patrick R. James

Patrick R. James, ABN 82084
James, House, Swann & Downing, P.A.
801 West Third Street
P. O. Box 3585
Little Rock, AR 72203-3585
(501) 372-6555 - Telephone
(501) 372-6333 – Facsimile
pjames@jamesandhouse.com

*Attorneys for Plaintiff*

## SEPARATION AGREEMENT AND RELEASE OF CLAIMS

This **Separation Agreement and Release of Claims** ("Agreement"), dated as of June 2, 2022, is made and entered into by:

Donnie Gates ("Employee" or "Gates") which includes his spouse and the marital community composed thereof, dependents, agents, attorneys, heirs, executors, administrators, personal representatives, successors, and assigns (if any); and

First Orion Corp., which includes its predecessors in interest, its current and former officers, agents, shareholders, directors, board members, employees, attorneys, accountants, successors, insurers, parent or subsidiary corporations, affiliated companies and organizations, and assigns and the respective current and former officers, agents, shareholders, directors, employees, attorneys, accountants, successors, and insurers of the parent, subsidiary, and affiliated companies (hereinafter collectively referred to as "Employer" or "First Orion"). Employee and Employer are collectively referred to herein as the "parties."

NOW THEREFORE, in consideration of the statements and mutual promises contained in this Agreement, the parties agree as follows:

### Article 1. Voluntary and Effective Acceptance

Employee acknowledges that he has had adequate and legally sufficient time to review this Agreement. Specifically, Employee acknowledges that pursuant to the Age Discrimination in Employment Act ("ADEA"), this Agreement was provided to him on June 2, 2022, ("Notice Date"), and that he has up to twenty-one (21) days to consider the Agreement. If Employee chooses to execute this Agreement prior to the end of twenty-one (21) days, it is solely his choice. Employee may revoke this Agreement within seven (7) calendar days following his signing of this Agreement. In the event of revocation, Employee shall communicate the fact of this revocation, in writing, to Libbi Whitehurst, lwhitehurst@firstorion.com. Employee understands and agrees that if he revokes this Agreement within the seven (7) calendar days, Employer is not obligated to fulfill the obligations contained in Article 3 below. Employee acknowledges that Employer advised him to seek legal guidance by consulting with an attorney or advisor of his own choosing concerning this Agreement and that it was entirely his decision whether to do so.

Employee understands the rights that have been waived by this Agreement, including specifically rights under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, as amended. Employee further represents and warrants that he enters into this Agreement and executes it freely, knowingly, and voluntarily without fraud, duress, coercion, or undue influence. Employee understands that this is a voluntary waiver of any and all claims that relate in any way to his employment with, complaints about, compensation due, or separation of employment from Employer. Employee

264468



Gates _____
First Orion _____

understands that the consideration that he received hereunder is in excess of anything to which he is otherwise entitled.

## Article 2. Representations and Warranties of Employee

Employee represents and warrants to Employer as follows:

**(a)**   That he has not assigned to a third party any of his current or potential claims against Employer, if any.

**(b)**   That he has no lawsuits, charges, administrative proceedings, or other claims of any nature pending against Employer in any state or federal court or before any state or federal agency or other administrative body.

**(c)**   That as of the effective date of the Agreement, he has received all the compensation due to him from work performed for Employer except as set forth in Article 3, including without limitation any and all overtime compensation, or leave with pay, and unpaid leave that may be due.

**(d)**   That he waives and relinquishes any claim to any right of reinstatement, future consideration for employment with Employer, assignment by any entity providing contracted employees to work for Employer, or any temporary employment with Employer. Moreover, Employee agrees to never apply for a position with Employer or take any assignments to work for Employer from any entity providing contracted employees to work with Employer or take any temporary employment with Employer. Employee acknowledges that he is not entitled to such employment and understands that he will not be hired or permitted to work for Employer or at any of its locations. If Employee applies for employment and Employer inadvertently hires him, or he is inadvertently assigned to Employer's locations by an entity providing contracted employees to work with Employer or is otherwise temporarily employed to work at Employer's locations, Employer may immediately terminate that employment without cause and without liability.

## Article 3. Promises of Employer

In consideration of Employee's representations, promises, and commitments contained in Articles 2 and 4 of this Agreement, Employer agrees to the following:

**3.1   Separation Date.** The parties acknowledge that the Employee's employment with Employer will terminate on June 2, 2022 (the "Separation Date"). Employee will be paid his regular salary through that date. This is in addition to the payment outlined in Article 3.2 below.

Gates _____
First Orion _____

### 3.2    Payment.

**(a)** Employer will pay to Employee $43,750.00 (forty-three thousand seven hundred and fifty dollars and zero cents), which represents three (3) months of Employee's base salary, less all deductions and withholdings required by law. Payment will be made during the regular payroll cycles of First Orion following the Separation Date and the effective date of this Agreement, whichever is later, and will be paid via direct deposit to Employee. Employee will be issued a 2022 IRS Form W-2 in such amount.

**(b)** Employer will pay Employee any earned and due commissions, less all deductions and withholdings required by law. Payments will be paid based on Employer's current commissions cycle and will be made during regular payroll cycles of First Orion following the effective date of this Agreement.

**(c)** If any of Employee's current accounts close within sixty (60) days after the Separation Date due to Employee's sustained, active assistance, Employer will pay a onetime payment of 5% (five percent) of ACV for each such closed account, less all deductions and withholdings required by law. Payment will be made during the regular First Orion payroll cycles and according to commission plan payment parameters of First Orion after the effective date of this Agreement.

**(d)** Employee was granted the option to purchase shares of the common stock of Employer pursuant to a Stock Option Agreement. Pursuant to the terms of the Stock Option Agreement (and the First Orion Corp. 2011 Nonqualified Stock Option Plan (the "Plan")), Employee is required to exercise the option for vested shares within 30 days after the Separation Date or the option will terminate. In the event Employee does not exercise the vested options within 30 days after the Separation Date, the right to exercise shall terminate and the options shall be voided pursuant to the terms of the Stock Option Agreement and Plan.

**(e)** Employer will pay for outplacement services for Employee with the outplacement firm of Challenger, Gray & Christmas in an amount not to exceed $4,500.00.

**(f)** Except as otherwise provided herein, Employer has no further obligations to Employee arising from his employment with Employer, whether as an employer or otherwise, effective as of Employee's last day of employment with Employer.

    **3.3    Conditions Precedent to Payment**. Employer's obligation to pay the compensation set forth immediately above is conditioned upon Employee's (i) execution and acceptance of this Agreement without revocation; and (ii) agreement to abide by the promises, releases, representations and warranties referred to herein, specifically

Gates _____
First Orion _____

the waiver and release of claims under Section 4. Employee further agrees that he has (iii) accepted the compensation set forth above; and (iv) was given a period of at least twenty-one (21) calendar days to consider the terms of this Agreement.

## Article 4. Promises of Employee

In consideration of Employer's promises and commitments as contained in this Agreement, the adequacy of which Employee recognizes, Employee agrees to the following:

**4.1     Release of Claims.** Employee fully, finally, and forever releases and discharges Employer from any and all known or unknown claims, obligations and liabilities, including, without limitation, those for personal injuries; for compensatory, punitive, or liquidated damages; for wages, salaries, commissions and bonuses; for deductions, back pay, front pay, retirement pay, court costs and attorneys' fees; for job assignments, promotions, transfers and past employment; or for any other known or unknown causes, claims or demands which he had, has, or may have had, because of his employment with, or separation of employment from, Employer.

Employee specifically releases, waives, satisfies, and discharges any and all claims that he has or may have had against Employer as of the date of the execution of this Agreement under:

(1)     Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, *et seq.*);

(2)     the Age Discrimination in Employment Act of 1967, as amended,(29 U.S.C. § 621 *et seq.*);

(3)     the Civil Rights Acts of 1866, 1871, 1964 and 1991;

(4)     the Americans with Disabilities Act of 1990, as amended (42 U.S.C. § 12101 *et seq.*);

(5)     the ADA Amendments Act of 2008, (42 U.S.C. § 12101, *et seq.*)

(6)     the Rehabilitation Act of 1973, as amended (29 U.S.C. § 701 *et seq.*);

(7)     the Genetic Information Nondiscrimination Act of 2008, (42 USC §2000ff *et seq);*

(8)     the Equal Pay Act of 1963, as amended (29 U.S.C. § 206(d), *et seq.*);

(9)     the Arkansas Civil Rights Act, as amended (A.C.A §16-123-101 *et seq.*):

(10)    the Uniform Contribution Among Tortfeasors Act, as amended (A.C.A. § 16-61-201 *et seq.*);

(11)    the Fair Credit Reporting Act, as amended (15 U.S.C. § 1681 *et seq.*);

(12)    the Occupational Health and Safety Act of 1970, as amended (29 U.S.C. § 651 *et seq.)* or any applicable state safety and health statutes, regulations, or common law;

Gates _____
First Orion _____

264468

(13)   the Family and Medical Leave Act, as amended (29 U.S.C. § 2601, *et seq.*);

(14)   the Arkansas Minimum Wage Act, as amended (Ark. Code Ann. § 11-4-201, *et seq.*);

(15)   the Fair Labor Standards Act, as amended (29 U.S.C. § 201, *et seq.*);

(16)   any and all claims under the laws of any state, county, municipality or other governmental subdivision of the United States or any state, including but not limited to, the State of Arkansas; and,

(17)   any and all other relevant Federal, State, Local laws, common laws, tort, contract, or statutory claims, and/or any claims for attorneys' fees and costs.

The enumeration of specific rights, claims, and causes of action being released should not be construed to limit the general scope of the Release in this Section. It is the intent of Employee that by this Agreement, he is giving up all rights, claims, and causes of action against Employer that accrued prior to the Effective Date of this Agreement whether or not Employee is aware of them and whether or not any damage or injury has yet occurred.

**Employee acknowledges that Employer has made certain representations in this Agreement, consistent with ADEA requirements and other applicable law, to the best of Employer's knowledge at the time of offering this Agreement. Employee fully understands that, if any fact with respect to any matter covered by this Agreement is found hereafter to be other than or different from the facts now believed by Employee to be true, Employee expressly accepts and assumes that this Agreement shall be and remain effective, notwithstanding such difference in the facts. Employee understands and agrees that, even if he should eventually suffer additional damages arising out of the matters released by this Agreement, he will not be able to make any claims for those damages; provided, however, this Agreement does not release any rights or claims arising after the date this Agreement is signed.**

**4.2     Non-Disparagement.** Employee will not disclose, communicate, make public or publicize in any manner any problems that he perceives he may have had with Employer, or any information or statements that might tend to impugn, disparage, defame, discredit, or detract from Employer or any of its employees, officers, or directors. Further, Employee will not authorize, encourage, or participate with anyone in making any disparaging or defamatory comments about Employer.

Employee agrees to direct all job references to the attention of Libbi Whitehurst, Chief People Officer, at Employer who will provide a neutral reference which will include dates of employment, job title, and rate of pay if authorized.

The provisions in this section do not preclude the parties from providing truthful testimony if compelled to do so by a legal process.

Gates _____
First Orion _____

**4.3     Return of Employer's Property.** Employee will return to Employer any credit cards, computers, cell phones, pagers, keys, badges, and any other equipment of Employer, which was in Employee's possession or under his control. Employee acknowledges and agrees that he has no claim or interest in any of these items. Further, Employee agrees that he has returned to Employer, and will not keep or deliver to anyone else, any and all records, documents, notes, personnel information, customer information, client information, financial information, memoranda, including all copies in any medium, and, in general, any and all material relating to Employer. If any such property is discovered in the future, Employee shall promptly return the property to Libbi Whitehurst, Chief People Officer of Employer.

**4.4     Cooperation.** Employee further agrees that he will make himself reasonably available, either in person or by telephone to answer questions, provide information, and to otherwise provide reasonable assistance to Employer as may reasonably be requested from time to time. Employee further agrees, upon reasonable request, to provide Employer his truthful and complete cooperation in any litigation matters arising out of or related to either his or Employer's activities during his employment by Employer, whether or not such matters have been commenced as of the termination of his employment. Further, Employee agrees that in the event his testimony or assistance would be necessary in any legal actions, including any investigations, he will fully cooperate without the necessity of subpoena. Such cooperation will be truthful and voluntary on his part. Such cooperation could include, but would not be limited to, in-person meetings with members of Employer, meetings with former and/or current employees when requested, and/or meetings with Employer's designated attorneys or auditors. This cooperation agreement remains in effect at all times and specifically after the receipt of compensation as set forth in Article 3.1. Employee will be entitled to the reimbursement of any reasonable expenses incurred as a result of his cooperation during the course of any litigation. These reasonable expenses would require prior approval and would be subject to any Employer expense and reimbursement policy.

### Article 5. Confidentiality, Nondisclosure, Non-Assistance & Non-Interference

**5.1     Agreement of Confidentiality and Non-Competition.** Employee recognizes and acknowledges that during the course of his employment he has had access to various confidential, financial, and proprietary information of a special and unique value which may include, without limitation: personnel information, client information, customer information, books and records relating to the operation, finance, accounting, security, and management of Employer and various business opportunities, marketing or business plans, business development, and the like, including proprietary information and any and all information that could provide an advantage or benefit to a competitor of Employer or harm Employer if disclosed to such competitor or other individual ("Confidential Information"). Employee agrees that he will not make any independent use of, or disclose to any person or organization, any Confidential Information. Further, Employee recognizes and acknowledges that he has agreed to

Gates _____
First Orion _____

264468

non-competition obligations and that those obligations remain in effect following his last date of employment. **Employee specifically agrees to comply with any confidentiality policy of Employer and to comply with the Proprietary Information and Inventions Agreement. Employee further specifically agrees to comply with all restrictive covenants entered with Employer including the Employee Confidentiality, Inventions and Non-Competition Agreement.**

**5.2    Nondisclosure of Agreement.** Employee shall not directly or indirectly discuss or disclose the existence or terms of this Agreement with anyone, except as provided herein. Employee agrees and understands that the terms of this Agreement are CONFIDENTIAL including the existence, fact and terms of this Agreement and the fact that money was paid to the Employee. Employee warrants not to have disclosed the above with anyone prior to signing and will not disclose to anyone the existence, fact and terms of this Agreement, except for Employee's spouse, attorney, and financial advisor, all of whom shall be informed of the confidential nature of this Agreement and agree to abide by its terms.

**5.3    Non-Assistance & Non-Interference.** Employee agrees not to help, advise, assist, testify, or provide any documents to any individual, entity, or organization, including, but not limited to any current or former employees of Employer, or applicants for employment, in any manner whatsoever with respect to any action or investigation involving Employer, unless lawfully subpoenaed.

Nothing in this Agreement is intended to interfere with Employee's rights under applicable law to file or otherwise institute a charge of discrimination, to participate in a proceeding with any appropriate federal or state government agency enforcing discrimination or other employment laws, or to cooperate with any such agency in an investigation. However, the consideration provided to Employee in this Agreement shall be the sole relief provided to him for the claims that are released in the Agreement, and he will not be able to recover any monetary benefits in connection with any such claim, charge, or proceeding.

## Article 6. Miscellaneous

**6.1    Denial of Liability.** By executing this Agreement, Employer does not in any way admit any liability whatsoever or admit any acts of wrongdoing or discrimination against Employee or any other persons. In fact, Employer specifically disclaims any liability to, or wrongdoing or discrimination against Employee or any other persons.

**6.2    No Benefits.** Effective as of Employee's last date of employment with Employer, Employee acknowledges that he shall not be eligible to participate in any Employee benefit plans and successors to presently existing plans of Employer, if any, unless otherwise stated herein or as required by law.

Gates _____
First Orion _____

264468

**6.3    Severability.** The provisions of this Agreement are severable, and if any part of it is found to be invalid, unlawful, or unenforceable, the other parts shall remain fully valid, lawful, and enforceable.

**6.4    No Precedent.** The terms of this Agreement will not establish any precedent, nor will this Agreement be used as a basis to seek or justify similar terms in any subsequent situation involving persons other than Employee. This Agreement shall not be offered, used, or admitted into evidence in any proceeding or litigation, whether civil, criminal, arbitral or otherwise, except for any actions to enforce the terms of this Agreement.

**6.5    No Reliance.** Employee has not relied upon any information provided or statements made by Employer or any of its agents, representatives, or attorneys that are not contained in this Agreement. In return for executing this Agreement, Employee is receiving only the consideration described in this Agreement.

**6.6    Merger.** This Agreement contains the entire agreement between the parties, and, except for any agreements between the parties relating to confidential information, it replaces any prior statements, agreements, or understandings between the parties. This Agreement is in no way intended to conflict with, restrict, limit, or in any other manner change the obligation to which the Employee is bound by any other agreement entered into with Employer relating to confidential information. All modifications to this Agreement must be made in writing and signed by the parties.

**6.7    Choice of Law.** This Agreement is deemed by the parties to be made and entered in the State of Arkansas. It shall be interpreted, enforced, and governed under the laws of Arkansas.

**6.8    Forum.** Any suit, action or proceeding with respect to this Agreement must be brought to the courts of the State of Arkansas, County of Pulaski, or in the United States courts located in the State of Arkansas ("Courts"). Employer, in its sole discretion may elect, and Employee irrevocably submits to, the jurisdiction of the Courts for the purpose of any such suit, action or proceeding. Employee irrevocably consents to the service of process in any suit, action or proceeding in the Courts by the mailing of a letter to Employee by registered or certified mail, postage prepaid. Nothing in this Agreement will affect Employer's right to serve process in any other manner permitted by law or shall limit Employer's right to bring any action or proceeding against Employee in courts in other jurisdictions. Employee irrevocably waives any objections which he may now or hereafter have to venue of any suit, action or proceeding arising out of or relating to this Agreement brought in the courts located in the State of Arkansas, County of Pulaski, and further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. Any action or proceeding by Employee against Employer can only be initiated in a court located in Pulaski County, Arkansas.

Gates _____
First Orion _____

**6.9    Construction.** This Agreement is deemed to have been drafted jointly by the parties and, in the event of a dispute, shall not be construed in favor of or against any party by reason of such parties' contribution to the drafting of this Agreement.

**6.10    Effective Date.** This Agreement will not become effective and enforceable until the 8th day after the date Employee signed it, provided that he has delivered his signed Agreement to Employer, and he did not revoke the Agreement per Article 1 above.

**6.11    Valid Signature.** Employee agrees that a signed and faxed copy or signed and emailed copy of this Agreement is just as valid as an original signed copy of this Agreement. Employee further agrees that this Agreement may be signed in multiple counterparts, each of which is an original. The parties further agree that signature may be by electronic signature with an audit trail or may be signed by hand.

**I have read this Agreement. I understand that I am giving up important rights. I am aware of my right to consult with an attorney of my own choosing during the consideration of this Agreement and that Employer has advised me to undertake such consultation before signing this Agreement. I sign this Agreement freely and voluntarily, without duress or coercion.**

**EMPLOYEE**

_____

Donnie Gates

Date: _____

**FIRST ORION CORP. d/b/a PRIVACY STAR**

_____

By:    Libbi Whitehurst

Its:    Chief People Officer

Date: _____

Gates _____
First Orion _____

264468

- 1 -

#### Proprietary Information and Inventions Agreement

### FIRST ORION CORP.

#### EMPLOYEE CONFIDENTIALITY,
#### INVENTIONS AND NON-COMPETITION AGREEMENT

This Agreement, dated as of Jun 14, 2019 , is by and between First Orion Corp., a Delaware corporation, with an address at 500 President Clinton Ave, Suite 215, Little Rock, AR 72201 (*Employer*) and the person identified on the signature page to this Agreement (*Employee*).

Employee is, or expects to become, employed by Employer or one or more of Employer's affiliates (such affiliates, whether now or hereafter existing, together with Employer, are referred to herein, collectively, as the *Company*).

In consideration of, and as part of the terms of, the employment or continued employment of Employee by the Company, the compensation paid and to be paid by the Company to Employee, the entrusting to Employee of certain trade secrets and proprietary information of the Company, and the mutual covenants and promises set forth herein, Employee and Employer, for itself and for the Company, agree as follows:

**1. Definitions.** Capitalized terms used herein have the respective meanings assigned in Schedule A annexed hereto.

**2. Freedom to Contract.** Employee represents that Employee is free to enter into this Agreement, Employee has not made and will not make any agreements in conflict with this Agreement, and Employee will not disclose or make available to the Company, or use for the Company's benefit, any trade secrets or confidential information which is the property of Employee or of any third party, including without limitation, any former employer, partner, co-venturer, client, customer or supplier. **EMPLOYEE REPRESENTS AND WARRANTS THAT (A) EMPLOYEE HAS DELIVERED TO THE COMPANY A COPY OF EVERY AGREEMENT THAT MAY BEAR ON EMPLOYEE'S EMPLOYMENT WITH THE COMPANY, INCLUDING WITHOUT LIMITATION, ANY NONCOMPETITION AGREEMENT, EMPLOYMENT AGREEMENT, PROPRIETARY RIGHTS AGREEMENT, NONDISCLOSURE AGREEMENT OR THE LIKE AND (B) EMPLOYEE WILL HONOR ALL SUCH AGREEMENTS.**

#### 3. Confidentiality.

**3.1 Acknowledgment.** Employee recognizes and acknowledges that:

- (a) the Company's Confidential Information is a valuable, special and unique asset of the Company;
- (b) access to and knowledge of the Confidential Information by Employee may be required so that Employee can perform his/her duties as an employee of the Company;
- (c) it is vital to the Company's legitimate business interests that (1) the confidentiality of the Confidential Information be preserved and (2) the Confidential Information only be used for the benefit of the Company;
- (d) disclosure of the Confidential Information to any other person or entity outside the Company or use of the Confidential Information by or on behalf of any other person or entity, unless specifically and unambiguously authorized by Employer, would result in irreparable harm to the Company;
- (e) disclosure or use beyond the permitted scope of Confidential Information entrusted to the Company by its customers and contractors would expose the Company to substantial damages;
- (f) the Confidential Information is and shall remain the exclusive property of the Company; and
- (g) nothing in this Agreement shall be construed as a grant to Employee of any rights, title or interest in, to or under the Confidential Information.



**From:** Sam Baxter <sbaxter@firstorion.com>
**Sent:** Wednesday, June 1, 2022 7:28 PM
**To:** Donnie Gates <dgates@firstorion.com>
**Cc:** Libbi Whitehurst <lwhitehurst@firstorion.com>
**Subject:** Follow Up

Donnie,

I am following up on our call this morning.

The terms of separation previously outlined by Libbi and contained in the draft of the Separation Agreement are the best that First Orion is willing to offer, and the decision to terminate your employment with First Orion will not change.

At this point we would like to know if you are willing to work cooperatively with David on the transition of accounts and opportunities that you are currently working.

PLAINTIFF'S EXHIBIT
8

If you can let me know yes or no on the transition assistance, I would appreciate it.

Thanks, Sam

 Sam Baxter
Chief Legal Officer
+1 501-690-3858
www.firstonon.com



**From:** Sam Baxter <sbaxter@firstorion.com>
**Date:** June 2, 2022 at 1:33:36 PM CDT
**To:** dgates7617@yahoo.com
**Cc:** Libbi Whitehurst <lwhitehurst@firstorion.com>
**Subject: First Orion Separation**


Donnie,

First Orion has made the determination to terminate your employment as of today,
June 2, and this email is First Orion's formal notification to you of that
determination.

I have attached an updated Separation Agreement and Release of Claims to
replace the draft that Libbi provided to you yesterday. Article I has been
modified to reflect the date this agreement is provided to you (June 2) so that it is
clear that the 21 day period to accept the agreement begins today. You have until
June 23 to sign this Agreement. If you decide to sign, please let me know and it
will be sent to you for electronic signature. In addition, the separation date in
Section 3.1 has been changed to June 2. There is no other changes to the
Agreement that was provided to you yesterday by Libbi.



PLAINTIFF'S EXHIBIT

I have also attached a copy of the Proprietary Information and Inventions Agreement that you signed June 14, 2019, when you joined First Orion. First Orion expects your ongoing adherence to the post termination obligations in this Agreement

Barbi Wood will be reaching out to you via this email address for the offboarding process and equipment return.

Sam

## SEPARATION AGREEMENT AND RELEASE OF CLAIMS

This **Separation Agreement and Release of Claims** ("Agreement"), dated as of June 2, 2022, is made and entered into by:

Donnie Gates ("Employee" or "Gates") which includes his spouse and the marital community composed thereof, dependents, agents, attorneys, heirs, executors, administrators, personal representatives, successors, and assigns (if any); and

First Orion Corp., which includes its predecessors in interest, its current and former officers, agents, shareholders, directors, board members, employees, attorneys, accountants, successors, insurers, parent or subsidiary corporations, affiliated companies and organizations, and assigns and the respective current and former officers, agents, shareholders, directors, employees, attorneys, accountants, successors, and insurers of the parent, subsidiary, and affiliated companies (hereinafter collectively referred to as "Employer" or "First Orion"). Employee and Employer are collectively referred to herein as the "parties."

NOW THEREFORE, in consideration of the statements and mutual promises contained in this Agreement, the parties agree as follows:

### Article 1. Voluntary and Effective Acceptance

Employee acknowledges that he has had adequate and legally sufficient time to review this Agreement. Specifically, Employee acknowledges that pursuant to the Age Discrimination in Employment Act ("ADEA"), this Agreement was provided to him on June 2, 2022, ("Notice Date"), and that he has up to twenty-one (21) days to consider the Agreement. If Employee chooses to execute this Agreement prior to the end of twenty-one (21) days, it is solely his choice. Employee may revoke this Agreement within seven (7) calendar days following his signing of this Agreement. In the event of revocation, Employee shall communicate the fact of this revocation, in writing, to Libbi Whitehurst, lwhitehurst@firstorion.com. Employee understands and agrees that if he revokes this Agreement within the seven (7) calendar days, Employer is not obligated to fulfill the obligations contained in Article 3 below. Employee acknowledges that Employer advised him to seek legal guidance by consulting with an attorney or advisor of his own choosing concerning this Agreement and that it was entirely his decision whether to do so.

Employee understands the rights that have been waived by this Agreement, including specifically rights under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, as amended. Employee further represents and warrants that he enters into this Agreement and executes it freely, knowingly, and voluntarily without fraud, duress, coercion, or undue influence. Employee understands that this is a voluntary waiver of any and all claims that relate in any way to his employment with, complaints about, compensation due, or separation of employment from Employer. Employee

264468



Gates _____
First Orion _____

understands that the consideration that he received hereunder is in excess of anything to which he is otherwise entitled.

### Article 2. Representations and Warranties of Employee

Employee represents and warrants to Employer as follows:

**(a)** That he has not assigned to a third party any of his current or potential claims against Employer, if any.

**(b)** That he has no lawsuits, charges, administrative proceedings, or other claims of any nature pending against Employer in any state or federal court or before any state or federal agency or other administrative body.

**(c)** That as of the effective date of the Agreement, he has received all the compensation due to him from work performed for Employer except as set forth in Article 3, including without limitation any and all overtime compensation, or leave with pay, and unpaid leave that may be due.

**(d)** That he waives and relinquishes any claim to any right of reinstatement, future consideration for employment with Employer, assignment by any entity providing contracted employees to work for Employer, or any temporary employment with Employer. Moreover, Employee agrees to never apply for a position with Employer or take any assignments to work for Employer from any entity providing contracted employees to work with Employer or take any temporary employment with Employer. Employee acknowledges that he is not entitled to such employment and understands that he will not be hired or permitted to work for Employer or at any of its locations. If Employee applies for employment and Employer inadvertently hires him, or he is inadvertently assigned to Employer's locations by an entity providing contracted employees to work with Employer or is otherwise temporarily employed to work at Employer's locations, Employer may immediately terminate that employment without cause and without liability.

### Article 3. Promises of Employer

In consideration of Employee's representations, promises, and commitments contained in Articles 2 and 4 of this Agreement, Employer agrees to the following:

**3.1    Separation Date.** The parties acknowledge that the Employee's employment with Employer will terminate on June 2, 2022 (the "Separation Date"). Employee will be paid his regular salary through that date. This is in addition to the payment outlined in Article 3.2 below.

Gates _____
First Orion _____

264468

## 3.2 Payment.

**(a)** Employer will pay to Employee $43,750.00 (forty-three thousand seven hundred and fifty dollars and zero cents), which represents three (3) months of Employee's base salary, less all deductions and withholdings required by law. Payment will be made during the regular payroll cycles of First Orion following the Separation Date and the effective date of this Agreement, whichever is later, and will be paid via direct deposit to Employee. Employee will be issued a 2022 IRS Form W-2 in such amount.

**(b)** Employer will pay Employee any earned and due commissions, less all deductions and withholdings required by law. Payments will be paid based on Employer's current commissions cycle and will be made during regular payroll cycles of First Orion following the effective date of this Agreement.

**(c)** If any of Employee's current accounts close within sixty (60) days after the Separation Date due to Employee's sustained, active assistance, Employer will pay a onetime payment of 5% (five percent) of ACV for each such closed account, less all deductions and withholdings required by law. Payment will be made during the regular First Orion payroll cycles and according to commission plan payment parameters of First Orion after the effective date of this Agreement.

**(d)** Employee was granted the option to purchase shares of the common stock of Employer pursuant to a Stock Option Agreement. Pursuant to the terms of the Stock Option Agreement (and the First Orion Corp. 2011 Nonqualified Stock Option Plan (the "Plan")), Employee is required to exercise the option for vested shares within 30 days after the Separation Date or the option will terminate. In the event Employee does not exercise the vested options within 30 days after the Separation Date, the right to exercise shall terminate and the options shall be voided pursuant to the terms of the Stock Option Agreement and Plan.

**(e)** Employer will pay for outplacement services for Employee with the outplacement firm of Challenger, Gray & Christmas in an amount not to exceed $4,500.00.

**(f)** Except as otherwise provided herein, Employer has no further obligations to Employee arising from his employment with Employer, whether as an employer or otherwise, effective as of Employee's last day of employment with Employer.

**3.3 Conditions Precedent to Payment**. Employer's obligation to pay the compensation set forth immediately above is conditioned upon Employee's (i) execution and acceptance of this Agreement without revocation; and (ii) agreement to abide by the promises, releases, representations and warranties referred to herein, specifically

Gates _____
First Orion _____

264468

the waiver and release of claims under Section 4. Employee further agrees that he has (iii) accepted the compensation set forth above; and (iv) was given a period of at least twenty-one (21) calendar days to consider the terms of this Agreement.

### Article 4. Promises of Employee

In consideration of Employer's promises and commitments as contained in this Agreement, the adequacy of which Employee recognizes, Employee agrees to the following:

**4.1    Release of Claims.** Employee fully, finally, and forever releases and discharges Employer from any and all known or unknown claims, obligations and liabilities, including, without limitation, those for personal injuries; for compensatory, punitive, or liquidated damages; for wages, salaries, commissions and bonuses; for deductions, back pay, front pay, retirement pay, court costs and attorneys' fees; for job assignments, promotions, transfers and past employment; or for any other known or unknown causes, claims or demands which he had, has, or may have had, because of his employment with, or separation of employment from, Employer.

Employee specifically releases, waives, satisfies, and discharges any and all claims that he has or may have had against Employer as of the date of the execution of this Agreement under:

(1)    Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e, *et seq.*);

(2)    the Age Discrimination in Employment Act of 1967, as amended,(29 U.S.C. § 621 *et seq.*);

(3)    the Civil Rights Acts of 1866, 1871, 1964 and 1991;

(4)    the Americans with Disabilities Act of 1990, as amended (42 U.S.C. § 12101 *et seq.*);

(5)    the ADA Amendments Act of 2008, (42 U.S.C. § 12101, *et seq.)*

(6)    the Rehabilitation Act of 1973, as amended (29 U.S.C. § 701 *et seq.*);

(7)    the Genetic Information Nondiscrimination Act of 2008, (42 USC §2000ff *et seq);*

(8)    the Equal Pay Act of 1963, as amended (29 U.S.C. § 206(d), *et seq.*);

(9)    the Arkansas Civil Rights Act, as amended (A.C.A §16-123-101 *et seq.*):

(10)   the Uniform Contribution Among Tortfeasors Act, as amended (A.C.A. § 16-61-201 *et seq.*);

(11)   the Fair Credit Reporting Act, as amended (15 U.S.C. § 1681 *et seq.*);

(12)   the Occupational Health and Safety Act of 1970, as amended (29 U.S.C. § 651 *et seq.)* or any applicable state safety and health statutes, regulations, or common law;

Gates _____
First Orion _____

264468

(13)   the Family and Medical Leave Act, as amended (29 U.S.C. § 2601, *et seq.*);

(14)   the Arkansas Minimum Wage Act, as amended (Ark. Code Ann. § 11-4-201, *et seq.*);

(15)   the Fair Labor Standards Act, as amended (29 U.S.C. § 201, *et seq.*);

(16)   any and all claims under the laws of any state, county, municipality or other governmental subdivision of the United States or any state, including but not limited to, the State of Arkansas; and,

(17)   any and all other relevant Federal, State, Local laws, common laws, tort, contract, or statutory claims, and/or any claims for attorneys' fees and costs.

The enumeration of specific rights, claims, and causes of action being released should not be construed to limit the general scope of the Release in this Section. It is the intent of Employee that by this Agreement, he is giving up all rights, claims, and causes of action against Employer that accrued prior to the Effective Date of this Agreement whether or not Employee is aware of them and whether or not any damage or injury has yet occurred.

**Employee acknowledges that Employer has made certain representations in this Agreement, consistent with ADEA requirements and other applicable law, to the best of Employer's knowledge at the time of offering this Agreement. Employee fully understands that, if any fact with respect to any matter covered by this Agreement is found hereafter to be other than or different from the facts now believed by Employee to be true, Employee expressly accepts and assumes that this Agreement shall be and remain effective, notwithstanding such difference in the facts. Employee understands and agrees that, even if he should eventually suffer additional damages arising out of the matters released by this Agreement, he will not be able to make any claims for those damages; provided, however, this Agreement does not release any rights or claims arising after the date this Agreement is signed.**

**4.2    Non-Disparagement.** Employee will not disclose, communicate, make public or publicize in any manner any problems that he perceives he may have had with Employer, or any information or statements that might tend to impugn, disparage, defame, discredit, or detract from Employer or any of its employees, officers, or directors. Further, Employee will not authorize, encourage, or participate with anyone in making any disparaging or defamatory comments about Employer.

Employee agrees to direct all job references to the attention of Libbi Whitehurst, Chief People Officer, at Employer who will provide a neutral reference which will include dates of employment, job title, and rate of pay if authorized.

The provisions in this section do not preclude the parties from providing truthful testimony if compelled to do so by a legal process.

Gates _____
First Orion _____

264468

.

**4.3     Return of Employer's Property.** Employee will return to Employer any credit cards, computers, cell phones, pagers, keys, badges, and any other equipment of Employer, which was in Employee's possession or under his control. Employee acknowledges and agrees that he has no claim or interest in any of these items. Further, Employee agrees that he has returned to Employer, and will not keep or deliver to anyone else, any and all records, documents, notes, personnel information, customer information, client information, financial information, memoranda, including all copies in any medium, and, in general, any and all material relating to Employer. If any such property is discovered in the future, Employee shall promptly return the property to Libbi Whitehurst, Chief People Officer of Employer.

**4.4     Cooperation.** Employee further agrees that he will make himself reasonably available, either in person or by telephone to answer questions, provide information, and to otherwise provide reasonable assistance to Employer as may reasonably be requested from time to time. Employee further agrees, upon reasonable request, to provide Employer his truthful and complete cooperation in any litigation matters arising out of or related to either his or Employer's activities during his employment by Employer, whether or not such matters have been commenced as of the termination of his employment. Further, Employee agrees that in the event his testimony or assistance would be necessary in any legal actions, including any investigations, he will fully cooperate without the necessity of subpoena. Such cooperation will be truthful and voluntary on his part. Such cooperation could include, but would not be limited to, in-person meetings with members of Employer, meetings with former and/or current employees when requested, and/or meetings with Employer's designated attorneys or auditors. This cooperation agreement remains in effect at all times and specifically after the receipt of compensation as set forth in Article 3.1. Employee will be entitled to the reimbursement of any reasonable expenses incurred as a result of his cooperation during the course of any litigation. These reasonable expenses would require prior approval and would be subject to any Employer expense and reimbursement policy.

### Article 5. Confidentiality, Nondisclosure, Non-Assistance & Non-Interference

**5.1     Agreement of Confidentiality and Non-Competition.** Employee recognizes and acknowledges that during the course of his employment he has had access to various confidential, financial, and proprietary information of a special and unique value which may include, without limitation: personnel information, client information, customer information, books and records relating to the operation, finance, accounting, security, and management of Employer and various business opportunities, marketing or business plans, business development, and the like, including proprietary information and any and all information that could provide an advantage or benefit to a competitor of Employer or harm Employer if disclosed to such competitor or other individual ("Confidential Information"). Employee agrees that he will not make any independent use of, or disclose to any person or organization, any Confidential Information. Further, Employee recognizes and acknowledges that he has agreed to

Gates _____
First Orion _____

264468

non-competition obligations and that those obligations remain in effect following his last date of employment. **Employee specifically agrees to comply with any confidentiality policy of Employer and to comply with the Proprietary Information and Inventions Agreement. Employee further specifically agrees to comply with all restrictive covenants entered with Employer including the Employee Confidentiality, Inventions and Non-Competition Agreement.**

   **5.2 Nondisclosure of Agreement.** Employee shall not directly or indirectly discuss or disclose the existence or terms of this Agreement with anyone, except as provided herein. Employee agrees and understands that the terms of this Agreement are CONFIDENTIAL including the existence, fact and terms of this Agreement and the fact that money was paid to the Employee. Employee warrants not to have disclosed the above with anyone prior to signing and will not disclose to anyone the existence, fact and terms of this Agreement, except for Employee's spouse, attorney, and financial advisor, all of whom shall be informed of the confidential nature of this Agreement and agree to abide by its terms.

   **5.3 Non-Assistance & Non-Interference.** Employee agrees not to help, advise, assist, testify, or provide any documents to any individual, entity, or organization, including, but not limited to any current or former employees of Employer, or applicants for employment, in any manner whatsoever with respect to any action or investigation involving Employer, unless lawfully subpoenaed.

   Nothing in this Agreement is intended to interfere with Employee's rights under applicable law to file or otherwise institute a charge of discrimination, to participate in a proceeding with any appropriate federal or state government agency enforcing discrimination or other employment laws, or to cooperate with any such agency in an investigation. However, the consideration provided to Employee in this Agreement shall be the sole relief provided to him for the claims that are released in the Agreement, and he will not be able to recover any monetary benefits in connection with any such claim, charge, or proceeding.

## Article 6. Miscellaneous

   **6.1 Denial of Liability.** By executing this Agreement, Employer does not in any way admit any liability whatsoever or admit any acts of wrongdoing or discrimination against Employee or any other persons. In fact, Employer specifically disclaims any liability to, or wrongdoing or discrimination against Employee or any other persons.

   **6.2 No Benefits**. Effective as of Employee's last date of employment with Employer, Employee acknowledges that he shall not be eligible to participate in any Employee benefit plans and successors to presently existing plans of Employer, if any, unless otherwise stated herein or as required by law.

Gates _____
First Orion _____

264468

**6.3    Severability.** The provisions of this Agreement are severable, and if any part of it is found to be invalid, unlawful, or unenforceable, the other parts shall remain fully valid, lawful, and enforceable.

**6.4    No Precedent.** The terms of this Agreement will not establish any precedent, nor will this Agreement be used as a basis to seek or justify similar terms in any subsequent situation involving persons other than Employee. This Agreement shall not be offered, used, or admitted into evidence in any proceeding or litigation, whether civil, criminal, arbitral or otherwise, except for any actions to enforce the terms of this Agreement.

**6.5    No Reliance.** Employee has not relied upon any information provided or statements made by Employer or any of its agents, representatives, or attorneys that are not contained in this Agreement. In return for executing this Agreement, Employee is receiving only the consideration described in this Agreement.

**6.6    Merger.** This Agreement contains the entire agreement between the parties, and, except for any agreements between the parties relating to confidential information, it replaces any prior statements, agreements, or understandings between the parties. This Agreement is in no way intended to conflict with, restrict, limit, or in any other manner change the obligation to which the Employee is bound by any other agreement entered into with Employer relating to confidential information. All modifications to this Agreement must be made in writing and signed by the parties.

**6.7    Choice of Law.** This Agreement is deemed by the parties to be made and entered in the State of Arkansas. It shall be interpreted, enforced, and governed under the laws of Arkansas.

**6.8    Forum.** Any suit, action or proceeding with respect to this Agreement must be brought to the courts of the State of Arkansas, County of Pulaski, or in the United States courts located in the State of Arkansas ("Courts"). Employer, in its sole discretion may elect, and Employee irrevocably submits to, the jurisdiction of the Courts for the purpose of any such suit, action or proceeding. Employee irrevocably consents to the service of process in any suit, action or proceeding in the Courts by the mailing of a letter to Employee by registered or certified mail, postage prepaid. Nothing in this Agreement will affect Employer's right to serve process in any other manner permitted by law or shall limit Employer's right to bring any action or proceeding against Employee in courts in other jurisdictions. Employee irrevocably waives any objections which he may now or hereafter have to venue of any suit, action or proceeding arising out of or relating to this Agreement brought in the courts located in the State of Arkansas, County of Pulaski, and further irrevocably waives any claim that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. Any action or proceeding by Employee against Employer can only be initiated in a court located in Pulaski County, Arkansas.

Gates _____
First Orion _____

264468

**6.9     Construction.** This Agreement is deemed to have been drafted jointly by the parties and, in the event of a dispute, shall not be construed in favor of or against any party by reason of such parties' contribution to the drafting of this Agreement.

**6.10     Effective Date.** This Agreement will not become effective and enforceable until the 8th day after the date Employee signed it, provided that he has delivered his signed Agreement to Employer, and he did not revoke the Agreement per Article 1 above.

**6.11     Valid Signature.** Employee agrees that a signed and faxed copy or signed and emailed copy of this Agreement is just as valid as an original signed copy of this Agreement. Employee further agrees that this Agreement may be signed in multiple counterparts, each of which is an original. The parties further agree that signature may be by electronic signature with an audit trail or may be signed by hand.

**I have read this Agreement. I understand that I am giving up important rights. I am aware of my right to consult with an attorney of my own choosing during the consideration of this Agreement and that Employer has advised me to undertake such consultation before signing this Agreement. I sign this Agreement freely and voluntarily, without duress or coercion.**

**EMPLOYEE**

_____

Donnie Gates

Date: _____

**FIRST ORION CORP. d/b/a PRIVACY STAR**

_____

By:     Libbi Whitehurst

Its:     Chief People Officer

Date: _____

Gates _____
First Orion _____

| From: | Patrick James |
| --- | --- |
| To: | Sam Baxter |
| Cc: | Christine Washburn; Will James |
| Subject: | FW: Donnie Gates/First Orion |
| Date: | Thursday, June 9, 2022 11:31:14 AM |
| Attachments: | Donnie Gates Owed commissions 060822.xlsx |
| | image002.png |

Sam,

Thank you and Libbi Whitehurst for talking to me Tuesday. It was helpful to hear each other's positions and comments.

I still have serious questions regarding age discrimination by First Orion against Donnie. From what I understand, he fit into the culture until the new younger employees were hired within the last several months. I do not understand how Donnie was fired and other younger employees were not. We look forward to receiving any documentation which support the company's position that Donnie was counseled about this prior to his termination.

I understand Donnie's standard commission is 10% on all new business including AT&T for Enterprise sales and 8% for small business. On 2nd year business (aka contract renewal) he is to receive 5%. Attached is a Commission sheet originally created by First Orion and provided to Donnie after his termination with our edits.
By our calculation Donnie is owed a total of $408,000 in commissions.

In an effort to bring about closure we make the following offer of settlement on behalf of Donnie Gates:

**Commission (See above)**
- Payment in full for all deals closed for AT&T coverage –
  Nice InContact & Rocket Mortgage $150k each @ $300k (@10%)
- All second half of payments for – Kaiser P & Rocket Mortgage $15k & $21k @ (5%)
- SiriusXM - last 2 redlines accepted, awaiting signature $74k (@10%)
- In short, Donnie will be paid the $408,000 he is owed

**Severance Pay**
- 6 months full salary if Non-compete is found to have been executed by Donnie. The termination will be withdrawn and there will be a new agreed termination date
- 3 Months full salary in the unlikely event it is proven that Donnie signed the non-compete.
- Donnie will not sign or agree to the current severance agreement
- If we are able to settle we will agree to mutual general releases

**Stock options Purchase**
- Given the time delay all of this has caused Donnie needs at least 90 days to figure out if he wants to purchase his options. Extension of his severance date might resolve this issue.
- Donnie will be deemed to be fully vested on June 17th (anniversary date) and should have



30 days after vesting to purchase.

**Non-Compete**

- Donnie will not agree to a noncompete or related agreement unless First Orion can prove he signed it---which he does not believe occurred.
- Donnie should be allowed, like Patrick Boyle, to work at Hiya or TNS.
- Donnie will agree to mutual nondisparagement and agreed wording to tell customers why he left.

We believe these terms are more than fair and reasonable and hope they are accepted.

Patrick R. James
JAMES, HOUSE, SWANN & DOWNING, P.A.
Post Office Box 3585 (Mailing)
Little Rock, AR 72203-3585
801 West Third Street (Physical)
Little Rock, AR 72201
(501) 372-6555 – Main
(501) 372-6333 – Facsimile
pjames@jamesandhouse.com
www.jameshousedowning.com



The information contained in this electronic message is protected by the attorney-client privilege and/or the attorney work product doctrine. It is intended solely for certain addressees, and privileges are not waived by transmission of this electronic message or its receipt by unintended persons. If this transmission is received in error, please permanently delete the message immediately or contact (501) 372-6555 to arrange for return of the message. Receipt of electronic mail or reply to electronic mail does not establish an attorney-client relationship between the sender and the recipient. FAIR DEBT COLLECTION PRACTICES ACT NOTICE: A portion of this firm's practice involves the collection of debts. If you are a debtor, anything you say or communicate by electronic message or other means can be used for that purpose.



**From:** Sam Baxter <sbaxter@firstorion.com>
**Date:** June 10, 2022 at 5:42:29 PM CDT
**To:** Patrick James <pjames@jamesandhouse.com>
**Subject: FW: Donnie Gates/First Orion**


Pat, I failed to attached the Workday screen shots and there is a excel file with the organization history as well.  They are attached to this email.

Sam

**From:** Sam Baxter
**Sent:** Friday, June 10, 2022 3:13 PM
**To:** Patrick James <pjames@jamesandhouse.com>
**Cc:** Christine Washburn <cwashburn@jamesandhouse.com>; Will James <wjames@jamesandhouse.com>
**Subject:** RE: Donnie Gates/First Orion

Pat,

I have attached the electronically signed Offer Letter, Employee Handbook Acknowledgement Agreement and the Proprietary Information and Inventions Agreement with the Adobe Sign audit report for each.

I have also attached documentation from Workday showing Mr. Gates was removed from a leadership role on October 7, 2021, which is in alignment with our telephone conversation regarding Mr. Gates' dismissal.

Finally, your statement below "Donnie will not sign or agree to the current



severance agreement" is viewed by First Orion as a rejection by Mr. Gates of the separation agreement that was offered by First Orion. To avoid any confusion about the status of that document, if your statement was not a formal rejection of the separation agreement, this email will serve as First Orion's withdrawal of the separation agreement.

Sam

**From:** Patrick James <pjames@jamesandhouse.com>
**Sent:** Thursday, June 9, 2022 11:31 AM
**To:** Sam Baxter <sbaxter@firstorion.com>
**Cc:** Christine Washburn <cwashburn@jamesandhouse.com>; Will James <wjames@jamesandhouse.com>
**Subject:** FW: Donnie Gates/First Orion

Caution! This message was sent from outside your organization.

Sam,

Thank you and Libbi Whitehurst for talking to me Tuesday. It was helpful to hear each other's positions and comments.

I still have serious questions regarding age discrimination by First Orion against Donnie. From what I understand, he fit into the culture until the new younger employees were hired within the last several months. I do not understand how Donnie was fired and other younger employees were not. We look forward to receiving any documentation which support the company's position that Donnie was counseled about this prior to his termination.

I understand Donnie's standard commission is 10% on all new business including AT&T for Enterprise sales and 8% for small business. On 2nd year business (aka contract renewal) he is to receive 5%. Attached is a Commission sheet originally created by First Orion and provided to Donnie after his termination with our edits. By our calculation Donnie is owed a total of $408,000 in commissions.

In an effort to bring about closure we make the following offer of settlement on behalf of Donnie Gates:

**Commission (See above)**
- Payment in full for all deals closed for AT&T coverage –
  Nice InContact & Rocket Mortgage $150k each @ $300k (@10%)
- All second half of payments for – Kaiser P & Rocket Mortgage $15k & $21k @ (5%)
- SiriusXM - last 2 redlines accepted, awaiting signature $74k (@10%)
- In short, Donnie will be paid the $408,000 he is owed

**Severance Pay**

- 6 months full salary if Non-compete is found to have been executed by Donnie. The termination will be withdrawn and there will be a new agreed termination date
- 3 Months full salary in the unlikely event it is proven that Donnie signed the non-compete.
- Donnie will not sign or agree to the current severance agreement
- If we are able to settle we will agree to mutual general releases

**Stock options Purchase**
- Given the time delay all of this has caused Donnie needs at least 90 days to figure out if he wants to purchase his options. Extension of his severance date might resolve this issue.
- Donnie will be deemed to be fully vested on June 17th (anniversary date) and should have 30 days after vesting to purchase.

**Non-Compete**
- Donnie will not agree to a noncompete or related agreement unless First Orion can prove he signed it---which he does not believe occurred.
- Donnie should be allowed, like Patrick Boyle, to work at Hiya or TNS.
- Donnie will agree to mutual nondisparagement and agreed wording to tell customers why he left.

We believe these terms are more than fair and reasonable and hope they are accepted.

Patrick R. James
JAMES, HOUSE, SWANN & DOWNING, P.A.
Post Office Box 3585 (Mailing)
Little Rock, AR 72203-3585
801 West Third Street (Physical)
Little Rock, AR 72201
(501) 372-6555 – Main
(501) 372-6333 – Facsimile
pjames@jamesandhouse.com
www.jameshousedowning.com

The information contained in this electronic message is protected by the attorney-client privilege and/or the attorney work product doctrine. It is intended solely for certain addressees, and privileges are not waived by transmission of this electronic message or its receipt by unintended persons. If this transmission is received in error, please permanently delete the message immediately or contact (501) 372-6555 to arrange for return of the message. Receipt of electronic mail or reply to electronic mail does not establish an attorney-client relationship between the sender and the recipient. FAIR DEBT COLLECTION PRACTICES ACT NOTICE: A portion of this firm's practice involves the collection of debts. If you are a debtor, anything you say or communicate by electronic message or other means can be used for that purpose